IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KARLA HUGHES, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:07-CV-1387 |
| vs. § | |
| § | |
| WAL-MART STORES, INC., § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION**

Before the Court are the Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment ("Def. Mtn." or "Motion") (Doc. # 39), Brief in Support ("Def. Br.") (Doc. # 41), and Appendix in Support (Doc. # 40); Plaintiff Karla Hughes' Response thereto ("Pl. Rsp." or "Response") (Doc. # 44) and Appendix in Support (Doc. # 48); and, Defendant's Reply ("Def. Reply") (Doc. # 46).

Plaintiff Karla Hughes ("Plaintiff") sued her former employer, Defendant Wal-Mart Stores, Inc. ("Defendant") alleging violations of: Title VII of the Civil Rights Act of 1964 ("Title VII"); 42 U.S.C. § § 2000e, 1983, 1981, 12112; Title I - the Americans with Disabilities Act ("ADA"); and, Section 819.12 of the Texas Administrative Code Unlawful Employment Practices ("TAC"). Plaintiff alleges Defendant intentionally discriminated against her individually and also maintained practices which had a disparate impact on female employees. Compl. para. 88-90. Based on the careful review of the pleadings, the motion, the response, the reply, and the applicable law, the Court grants Defendant's motion for summary judgment and by separate order enters final judgment. The reasons for the Court's decision are set forth below.

1

**Background**

    This employment discrimination case arises out of claims originating from Plaintiff's former employment with Defendant. As this case is before the Court on a motion for summary judgment, the facts, as set forth below, are in the light most favorable to the non-movant.

    Plaintiff is a Caucasian woman and former employee of Defendant, a large-scale retailer operating stores in the Dallas/Fort Worth metropolitan area. Plaintiff began her employment with Defendant in September 2003. App. 46, 65.  Plaintiff was hired by Mr. Aaron Carter and began her employment with the understanding that upon successful completion of the company's management training program she would be elevated to a permanent retail management position.[1] App. 10-11. At the time of her hiring Plaintiff was informed of Defendant's policies prohibiting the discrimination of its employees on the basis of gender and/or disability and sexual harassment.  App. 11-12, 66-71, 72-74, 76-77.

    Plaintiff began her training with Defendant by working in various stores throughout the greater Dallas-Fort Worth Metropolitan area.  From September 2003 until March 12, 2005, Plaintiff worked in six retail stores as a part of the co-manager training program, each time serving in a different capacity based upon the needs of the store.

    Plaintiff's complaint and briefs iterate details of general disappointment[2] for not being

---

[1]Defendant utilizes a Web-Based Management Career Selection system which enables all management candidates to apply for open positions. App. 151-183. Each posted position has a minimum criteria for consideration which if not met by a candidate will result in the termination of the application process. For the position of Co-Manager, a successful candidate must have a performance evaluation of 3.5 or higher. App. 155.

[2]The gravamen of Plaintiff's filings before the Court center around the prolonged duration of her management training without being elevated to a management positions. However, the competent evidence on the record indicates that Plaintiff, as late as November 28, 2004, concedes not to have been qualified for such a promotion. App. 22, 81-82. Additionally, Plaintiff testified that the employee of

placed in a permanent co-manager position during the course of employment, yet upon review of the evidence submitted, the incidents of alleged discrimination for consideration on the record are limited. For example, Plaintiff affirmatively disclaimed any claims for disability discrimination through February 2005. App. 26. Plaintiff stated that her only complaint during her time at the first three stores to which she was assigned was that she felt she was treated with disrespect. App. 17, 19.

The specific episodes of alleged discrimination on the record can be chronicled to Plaintiff's assignment to work at Store # 896. Plaintiff was assigned to Store # 896 in August 2004 until February 2005 to assist while a female Co-Manager took a temporary leave of absence. App. 20-21. The Store Manager, and the person to whom Plaintiff reported was Mr. James Bozard. *Id*. During this time it was understood that Plaintiff's assignment was temporary and she could not be considered for the position of Co-Manager because the current Co-Manager was on temporary leave. App. 21. During her assignment to work at Store # 896, Plaintiff identified ambiguous comments that were of "an on-standing" nature where colleagues would suggest that the Store Manager "want[ed]," "[was] looking at" Plaintiff. App. 26. Plaintiff stated that she was told by the co-manager that she did not need to worry about being re-assigned from the store because the Store Manager "want[ed] [her] sexually." App. 23 -24, 26. Plaintiff also stated that a second co-manager at the same store, when asked if she needed to worry about being transferred, responded by asking if she had "slept with" the Store Manager[3]. *Id*. Plaintiff responded that she had not an did not intend to do so. *Id*. Plaintiff did not report these incidents

---

Defendant that hired her, Mr. Aaron Carter, encouraged her to apply for various co-manager positions. App. 15

[3]Plaintiff estimates that these comments were made in January 2005. App. 23.

3

to human resources because she was "too intimidated and scared to really talk to anybody." App. 23. When asked to state the facts supporting the claims of gender and disability discrimination during the time of assignment to Store # 896, Plaintiff stated that she was "treated as an outsider, and I felt that because I was a female, I felt that James didn't speak to me. App. 24.

In February 2005, Plaintiff was transferred from Store # 896 to Store # 5147 to continue her training. App. 26-27. With respect to allegations of discriminatory conduct by employees at Defendant's Store # 5147, Plaintiff did not provide specific incidents on the record. In her deposition she stated that she "felt like [she] had been treated differently that the males, and talked to differently and communicated less. . . [I]t just seemed like they [males] were being treated differently." App. 28. On March 12, 2005, Plaintiff left work complaining of anxiety and personal illness and obtained the appropriate Leave of Absence forms from the personnel department which outlined the company's leave of absence program and policy. App. 28-29. After seeing a physician on March 17, 2005, Plaintiff submitted her leave request form[4] and was officially placed on leave of absence[5] for depression and anxiety beginning March 17, 2005, through June 3, 2005. App. 86. Plaintiff never returned to work for Defendant. App. 29.

On April 28, 2005, Plaintiff was involved in an automobile accident. App. 32. As a result of the injuries sustained in the accident, Plaintiff applied for, and received, long term disability payments. App. 33. Plaintiff's medical treatments related to the car accident ended sometime in September or October 2005. *Id.*

---

[4]Plaintiff testified that this was the only request for leave form she submitted to Defendant. App. 30.

[5]Leave of absence was approved by Defendant on April 1, 2005. App. 86.

4

Defendant's Leave of Absence ("LOA") policy contains specific instructions employees must follow while on leave. App. 131-150. Specifically, employees are required to request an extension of leave by completing and submitting another request form with the appropriate accompanying documentation. App. 144. Despite these requirements, Plaintiff did not submit another leave request form. App. 30. In addition to the obligation of employees to file follow-up requests for extensions of leave of absence, Defendant's LOA policy requires that they provide updated reports on their status and that a failure to do so can result in voluntary termination from the company. App. 127-128. Personnel Management at Wal-Mart averred to having attempted to contact Plaintiff, but she failed to contact and provide updated information on her leave status. App. 186-187. Consequently, Plaintiff was terminated[6] from employment with Defendant effective January 17, 2006.[7] *Id.* The long term disability payments Plaintiff had been receiving as a result of the April 2005 car accident ended in March 2006. App. 34.

On March 26, 2007, Plaintiff wrote a letter to the Equal Employment Opportunity Commission's ("EEOC") Dallas Office outlining the alleged facts of discriminatory conduct by Defendant during her employment. App. 36, 92. On May 5, 2007, Plaintiff filed her formal charge with the EEOC alleging discrimination based on gender, age, race, and disability. App. 96. Plaintiff's EEOC charge did not include disparate impact claims. *Id.* On May 10, 2007, the

---

[6] When asked if she was alleging that her termination was based on gender, Plaintiff stated, "that would be no." App. 44. Thus, based on the the record, it appears that Plaintiff acknowledges that gender did not factor into the decision to terminate her employment.

[7] Plaintiff seemingly disputes the January 17, 2006 date, as she provides different dates for learning of her termination with Defendant. The earliest date Plaintiff avers to have learned of her termination was in September, 2005. App. 61. The second date arises from Plaintiff's sworn response to Defendant's interrogatories wherein she states that she was aware of her terminated status in January, 2006. App. 51. The latest date Plaintiff provides for hearing about her termination from employment is March 2006, when she alleges to have called Defendant and was informed of the termination. App.34.

EEOC sent Plaintiff a letter of dismissal of her claims.  App. 96-97.

**Legal Standard**

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.*  The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that this is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.  Neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "[T]he party opposing summary judgment is required to identify specific evidence in the record and to

articulate the precise manner in which that evidence supports his claim." *Id*. (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

**Analysis**

A.      Title VII and the ADA -  Plaintiffs' Failure to Exhaust Administrative Remedies

A plaintiff alleging employment discrimination, retaliation, or harassment under Title VII, and the ADA, as Plaintiff has done in the present case, must exhaust administrative remedies before pursing claims in federal court. 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a); *see also Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002)(ADA); *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378-79 (5th Cir. 2002)(Title VII); *Thomas v. Atmos Energy Corp*., 223 Fed. Appx. 369, 376 (5th Cir. 2007)("The filing of an administrative complaint is a prerequisite to a Title VII suit."). A plaintiff exhausts administrative remedies by filing a charge of discrimination with the EEOC within three hundred days of the alleged

discriminatory or retaliatory acts, and files suit within ninety days after receipt of the EEOC's notice of right to sue. *See Taylor*, 296 F.3d at 378-79. If a claim is not filed within the three hundred day statutory time limitation it is time-barred. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Congress intended this period to act as a statute of limitations. *Webb v. Cardiothoracic Surgery Associates of North Texas, P.A.*, 139 F.3d 532, 537(5th Cir. 1998). Thus, a plaintiff cannot sustain a claim based upon incidents that occur more than three hundred days before the filing of the charge of discrimination. *Id*.

Here, it is undisputed that Plaintiff filed a charge of discrimination with the EEOC on May 5, 2007.  App. 96.  Pl. Rsp. at 8.  Considering the latest date of termination averred to by Plaintiff, the record demonstrates that her employment ended in January 2006.  App. 51. Defendant contends that the alleged discriminatory acts cited in Plaintiff's complaint and response to its motion for summary judgment are time-barred, because they are based on events which occurred more than three hundred days before Plaintiff's EEOC filing. *See generally*, Def. Br.  Based on the competent summary judgment evidence, Defendant correctly argues that Plaintiff has failed to exhaust administrative remedies within the three hundred day requirement as to her ADA and Title VII claims.  Accordingly, these claims are barred.[8]

B.      *Section 1981 Claims*

---

[8] In addition to Plaintiff's failure to exhaust administrative remedy within the statutory period, the Court also notes that her claims for disparate impact are also fatally barred for failure to exhaust administrative remedies.  Upon review of Plaintiff's EEOC charge, it is clear that she failed to submit claims of disparate impact. "Needless to say, disparate impact and disparate treatment are two distinct claims under Title VII." *Gordon v. Peters*, 2008 U.S. App. LEXIS 918, *3 (5th Cir. 2008) *citing Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006).  Moreover, the Court notes the absence of any evidence in the summary judgment record setting forth "employment practices or policies that are facially neutral in their treatment of . . . protected groups, but, in fact, have a disproportionately adverse effect on such a protected group." *Pacheco* at 787. In fact, Plaintiff testified that she did not have any knowledge of any policies that may have had an adverse impact on women or disabled employees App. 40.

Plaintiff alleges that Defendant violated 42 U.S.C. § 1981, which provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The aim of section 1981 is to "remove the impediment of discrimination from minority citizens' ability to participate fully and equally in the market place." *Letap Hospitality, L.L.C. v. Days Inn Worldwide, Inc.*, 2008 U.S. Dist. LEXIS 62442, * 19-20, (E.D. La., Aug. 7, 2008), citing *Turner v. Wong*, 363 N.J.Super. 186, 211 (2003). Thus, section 1981 "provides protection against discriminatory conduct during and after the formation of a contract" in order to "prevent discriminatory enforcement of contracts and the impingement of the benefits, terms, privileges and conditions of a contractual relationship." *Id.* at 20. To establish a prima facie case in the pleadings under section 1981, a plaintiff must show that (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288-289 (5th Cir. 2004), citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997).

In the present case, Defendant argues that Plaintiff has failed to state a claim under 42 U.S.C. § 1981. Def. Reply at 3. Plaintiff, a Caucasian woman, does not meet the first prong of the prima facie case for a Section 1981 claim. As such, this claim is dismissed.

*C.     Section 1983 Claims*

Plaintiff alleges that Defendant violated 42 U.S.C. § 1983.[9] *See* Complaint; Pls. Rsp.at 6.

---

[9] The provision provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to

To state a cause of action under Section 1983 a plaintiff must allege the deprivation of a federal right by one acting under color of law. *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994); *Bledsoe v. City of Horn Lake, Mississippi*, 449 F.3d 650, 653 (5th Cir. 2006).  Section 1983 does not itself create or establish any federally protected right.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (stating that section 1983, standing alone, is not a source of substantive rights; it provides the means by which federal rights elsewhere conferred may be vindicated).  In Section 1983 actions, allegations that are merely conclusory, without reference to specific facts, will not suffice. *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986).

In the present action, Plaintiff argues that Defendant's actions prevented her from receiving appropriate accumulation of social security and pension benefits. Pls. Rsp. at 6.  As Defendant correctly argues, this section requires that Defendant have acted under color of state law in order to be liable for Plaintiff's alleged civil rights violations. The record in this case does not demonstrate any evidence to indicate that Defendant, a private company, acted under color of state law. Accordingly, this claim should be dismissed.

D.      *Section 819.12 - Texas Administrative Code Unlawful Employment Practices  ("TAC")*

Plaintiff's final claim is that Defendant violated section 819.12 of TAC. The TAC does not provide individuals with a private cause of action, it instead sets forth procedures to the Texas Workforce Civil Rights Division to execute its responsibilities in the administration and enforcement of Chapter 21 of the Texas Labor Code. *See* 40 TEX. ADMIN. CODE § 819.10.[10]

---

the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.

[10] "The purpose of Subchapters B-F of this chapter is to set forth the procedures for [the Texas Workforce Commission Civil Rights Division] to execute its responsibilities in the administration and enforcement of Texas Labor Code, Chapter 21."  Available at:

Accordingly, Plaintiff's claim brought on this theory should be dismissed.

**Conclusion**

Based upon the evidence submitted on the record, Plaintiff claims of discrimination cannot be sustained. With respect to claims involving Title VII and the ADA, the alleged discriminatory incidents upon which her claims rely occurred more than three hundred days before filing the EEOC charge and are appropriately time-barred. Plaintiff Section 1981 and 1983 claims are dismissed for failing to establish the necessary elements of those claims. Finally, Plaintiff claims under TAC are improperly pled in this action. Accordingly, all of Plaintiff's claims are dismissed.

So ORDERED this 31st day of August, 2009.

_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**

---

http://info.sos.state.tx.us/pls/pub/readtac$ext.viewtac